[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
After a protracted and difficult trial spanning thirteen days and including sixty exhibits,[1] a dissolution of the marriage of these parties was decreed on July 27, 1992. The parties were married for over thirty years. The court (Bassick, J.) found that the plaintiff wife was "a timid, frightened person . . . slow in answering questions . . ." and found that "it is clear that she must have financial support." Memorandum of Decision dated July 22, 1993. The court awarded her permanent periodic alimony of $450 per week, terminable upon the contingencies of death or her remarriage only. The court; further created a "safe harbor" for $17,500 per year of her earned income. The defendant husband appealed.
On February 1, 1993, the parties presented to the court a stipulation, agreeing to certain alternative property division provisions than those contained in the original memorandum of decision and agreeing to the withdrawal of the appeal. That stipulation, accepted by the court as an amendment to the judgment, did not alter in any way the alimony provisions of the judgment.
This is the second Motion to Modify Alimony filed by the defendant Felix Didonno within the last year. He seeks to eliminate his obligation to pay alimony to the plaintiff. The court denied his earlier motion to modify dated October 24, 1996, rendering a decision on February 6, 1996.[2] The court also CT Page 9449 heard at the same time the plaintiff's Motion for Contempt dated December 29, 1995. The court found the defendant in contempt for failing to make alimony payments from October 1995 to February 10, 1996, and ordered the defendant to pay off the arrearage of $8550 at the rate of $165 per week.[3]
This second motion to modify alimony was filed by the defendant on June 6, 1996. The court heard evidence over a two-day period on August 29 and 30, 1996. The parties were invited to file post-trial briefs.
The defendant alleges that his and the plaintiff's circumstances have changed so that an elimination of the alimony order or a very drastic reduction in the alimony order is warranted.
With respect to his claim that the plaintiff's circumstances have changed, the evidence is that although she now operates a small retail store, her circumstances have not changed in any appreciable way. She experienced a net operating loss in 1994 of $12,000 and in 1995 of about $2000. Aside from some very modest income generated by her hobby of attending Foxwoods Casino, her only other income has come from her investments awarded her at the time of the dissolution and, of course, her alimony. The gross receipts from her business in the each of the last two years ($20,864 in 1994 and $21,431 in 1995) have been barely more than that of the $17,500 safe harbor. There has been no substantial change in financial circumstances of the plaintiff.
The defendant claims a variety of changes in his own circumstances, some of which are the same as those he claimed at the last hearing before this court in February.[4] For years the defendant's principle occupation was the ownership and management of a business named Genovese and Didonno Construction. That company suffered business reversals and IRS difficulties since the time of the parties' dissolution. The defendant also has an interest in a number of other businesses which he uses to generate income for himself. Interestingly, as the evidence developed, it is clear that the defendant has been less than candid about his true relationship to these companies over which he exercises control. See footnote 4, supra.
The defendant claims that Genovese and Didonno, the company that generated most of his income, has become all but dormant, and that he was until recently effectively out of a job. He CT Page 9450 testified that he had no income until he recently prevailed upon some of his contacts in the construction industry to find him a salaried position as a construction manager with Case Management, Inc. He now shows a gross weekly income of $500. His personal and household expenses are covered by a companion named Ann Laraia with whom he resides.
At about the same time he filed his first motion to modify alimony in October 1995, the defendant who was the founder and co-owner with Joseph Squillacote of another company known as Triangle Builders, Inc. "sold" the company for one dollar to Ms. Laraia who had no previous experience in the construction business and to Nancy Squillacote, wife of the defendant's business partner. Using his decades of expertise in the construction industry, the defendant assisted Ms. Laraia in bidding and obtaining work for Triangle Builders.
One of the jobs on which Triangle Builders was a successful bidder was the "Asylum Hill" project. The amount of the contract to Triangle is about $500,000. The Asylum Hill project is the job on which the defendant is currently employed as the construction supervisor for Case Management.
Triangle Builders now occupies a building which is owned by JFJ Realty, another company of which the defendant is a principal. Triangle Builders pays no rent to JFJ at present thus allowing JFJ to show itself as generating no profit to the defendant. Triangle Builders is employing GDS, Inc., another company of which the defendant is a principle shareholder as a subcontractor on the Asylum Hill project.
The court finds the defendant continues to utilize the intricacies of these business relationships to derive personal benefit without showing any actual cash flow attributable to him.
The court also finds that the defendant has chosen to hide behind his live-in companion for purposes of income generation, so that he has the benefit of his earning capacity, through her, without having to declare that it is really his efforts which have produced the income from which he benefits.
Furthermore, there has been, despite the defendant's protestations, no change in the defendant's earning capacity. He withdrew from Triangle Builders for no consideration just at the time when Triangle intended to actively seek work and CT Page 9451 coincidentally when defendant first moved to modify alimony. The defendant testified that he has not sought employment with Triangle Builders, though he told a sad tale of the 15 or 20 places that he looked for work beginning in February until he found the job at Case and a temporary earlier job at Omni F L R Associates, Inc.
The defendant's testimony that his earning capacity has diminished is not credible. Substantial other evidence establishes that his earning capacity is unchanged since the time of the dissolution. His attempt to manipulate his personal and business finances to try to hide his true earning capacity from the plaintiff and from the court is not only disingenuous; it is reprehensible.
The defendant's motion to modify alimony is denied. The plaintiff's Motion for Counsel Fees to defend is granted. The court awards the plaintiff the sum of $3200 in attorney fees and $468.55 in costs, to be paid to plaintiff's counsel within 45 days. The caseflow coordinator will promptly schedule a renewed hearing on the plaintiff's Motion for Contempt.
Patty Jenkins Pittman, Judge